1  Kevin S. Asfour (#228993)
   kevin.asfour@klgates.com
2  K&L GATES LLP
   10100 Santa Monica Blvd., 8th Floor
3  Los Angeles, CA 90067
   Telephone: (310) 552-5000
4  Fax: (310) 552-5001

5  Andrew C. Glass (*pro hac vice*)
   andrew.glass@klgates.com
6  Gregory N. Blase (*pro hac vice*)
   gregory.blase@klgates.com
7  Roger L. Smerage (*pro hac vice*)
   roger.smerage@klgates.com
8  K&L GATES LLP
   State Street Financial Center
9  One Lincoln Street
   Boston, MA 02111
10 Telephone: (617) 261-3100
   Fax: (617) 261-3175
11
   Attorneys for Defendants
12 *NRG ENERGY, INC. and NRG*
   *RESIDENTIAL SOLAR SOLUTIONS LLC*
13
                    UNITED STATES DISTRICT COURT
14
                   CENTRAL DISTRICT OF CALIFORNIA
15
   MARA ALLEN and GILBERT              Case No. SACV-15-01128-CJC-JCG
16 ABARCA, on behalf of
   themselves and all persons similarly **DEFENDANTS' OPPOSITION TO**
17 situated,                           **PLAINTIFFS' MOTION TO STAY,**
                                        **DISMISS, OR TRANSFER THE**
18                 Plaintiff,           ***DOBKIN* ACTION**

19 vs.                                 Assigned to Hon. Cormac J. Carney

20 NRG ENERGY, INC., NRG               Date:      September 11, 2017
   RESIDENTIAL SOLAR SOLUTIONS         Time:      1:30 pm
21 LLC, and DOES 1-100, inclusive,     Location:  Courtroom 9B

22                 Defendants.

23

24

25

26

27

28

   ───────────────────────────────────────────────────────────────
   **DEFENDANTS' OPPOSITION TO MOTION TO STAY, DISMISS, OR TRANSFER *DOBKIN* ACTION**

1   Plaintiffs' motion is a rehash—and, at times, a verbatim recitation—of their
2   opposition to defendants' motion to stay pending approval of the classwide settlement
3   in the related matter *Dobkin v. NRG Residential Solar Solutions LLC*, Case No. 3:15-
4   cv-05089 (D.N.J.).[1]  Plaintiffs again admit that the *Dobkin* settlement encompasses the
5   parties and claims here.  Under these circumstances, the presumption is that the *Dobkin*
6   court should control its own docket.  Yet plaintiffs fail to inform the Court of that legal
7   principle, much less provide any justification as to why the Court should interject itself
8   into *Dobkin* where (1) the *Dobkin* court has facilitated publicly-disclosed settlement
9   negotiations for over a year, (2) Magistrate Judge Lois H. Goodman closely supervised
10  those negotiations for over five months, and (3) the parties actively litigated *Dobkin* all
11  the while and indeed, for the same length of time as this case.[2]  The *Dobkin* court has
12  now set a preliminary approval hearing date to consider the class settlement and stayed
13  proceedings so that it may conduct its review.  *See Dobkin* Dkt. No. 79.  In the interest
14  of comity, this Court should permit the *Dobkin* court to do so and should deny
15  plaintiffs' request that this Court stay, dismiss, or transfer the *Dobkin* matter.

16  In particular, plaintiffs' motion fails for five independent reasons:

17  **First**, the presumption is that the *Dobkin* court should control its own docket.
18  "Normally … it is 'the *second* district court' that exercises its 'discretion to transfer,
19  stay, or dismiss the *second* case in the interest of efficiency and judicial economy.'"
20  *National Union Fire Ins. Co. v. Payless Shoesource, Inc.*, No. C–11–1892 EMC, 2012
21  WL 3277222, at *7 (N.D. Cal. Aug. 9, 2012) (quoting *Cedars-Sinai Med. Ctr. v.*
22  *Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).[3]  Because it is "the exception rather than

---

[1] Plaintiffs did not confer with defendants pursuant to Local Rule 7-3 before filing their motion, thus it lacks the requisite certification of conferral and is improper.

[2] Defendants refer the Court to the summary of the procedural posture and the settlement negotiations in the *Dobkin* case, set forth in defendants' reply in support of their motion to stay.  Dkt. No. 108 at 2:25-3:17.

[3] Because most of plaintiffs' cases involved the *second*-filed court managing its own docket, those decisions provide no support for plaintiffs' request that the Court disregard the normal rule.  *See, e.g.*, *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 624 (9th Cir. 1991); *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1291 (N.D. Cal. 2013); *Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-cv-00696-YGR, 2013 U.S. Dist. LEXIS 96435, at *1-2 (N.D. Cal. July 10, 2013); *Ruff v.*

1

the rule," the first-filed court should view critically any request to "enjoin[] an action underway in a sister court." *Id.* In *National Union*, for example, the first-filed court refused to stay, dismiss, or transfer a related, subsequently-filed case pending in another judicial district. *Id.* "Plaintiff cites no good reason why it does not first ask the … court in the second filed action to stay proceedings therein in deference to the first-filed rule." *Id.* at *9. Here, plaintiffs fail to even advise the Court that their request for relief is an exception to the rule, much less offer any explanation why the Court should make such an exception or why plaintiffs could not have presented their request to the *Dobkin* court, which comity demanded they do. *See id.* And, plaintiffs' reliance upon *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999), to suggest that the first-filed court decides the issue, *see* Pls.' Mot. at 7:21-8:1, is misplaced, as the rule the Fifth Circuit applied in that case is contrary to the Ninth Circuit rule that places the decision in the second-filed court's hands. *Compare Cadle Co.*, 174 F.3d at 605-06, *with Cedars-Sinai Med. Ctr.*, 125 F.3d at 769.

**Second**, plaintiffs have no support for their suggestion that transfer of *Dobkin* is mandatory merely by virtue of its similarity to this case. *See* Pls.' Mot. at 9:27-10:4. To the contrary, the Ninth Circuit has ruled that even where cases are similar, the doctrine should *not* be applied where the plaintiff failed to bring the later-filed case "promptly to the attention of the district court … at the outset." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (cited in Pls.' Mot. at 6:25-26), *overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016); *see Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 239 n.11 (9th Cir. 1989) ("equity aids the vigilant, not those who slumber on their rights"); *see also Schwartz v. Frito-Lay N. Am.*, No. C-12-02740

---

*Del Monte Corp.*, No. C 12-05251 JSW, 2013 U.S. Dist. LEXIS 51263, at *5-6 (N.D. Cal. Apr. 9, 2013); *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740(EDL), 2012 WL 8147135, at *1 (N.D. Cal. Sept. 12, 2012); *Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL 2669627, at *1 (N.D. Cal. July 7, 2011); *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F, Supp. 2d 949, 952 (N.D. Cal. 2008); *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008); *Weinstein v. Metlife Inc.*, No. C 06-04444 SI, 2006 U.S. Dist. LEXIS 83115, at *2-9 (N.D. Cal. Nov. 6, 2006).

DEFENDANTS' OPPOSITION TO MOTION TO STAY, DISMISS, OR TRANSFER *DOBKIN* ACTION

1   EDL, 2012 WL 8147315, at *2 (N.D. Cal. Sept. 12, 2012) (cited in Pls.' Mot. at 10:11-
2   15) ("court may disregard the [first-to-file] rule in the interests of equity").

3          Plaintiffs' counsel has been aware of the *Dobkin* case for nearly two years.  *See*
4   Declaration of Gregory N. Blase, dated August 21, 2017, ¶ 3.  The status of the *Dobkin*
5   settlement negotiations was publicly-disclosed on the *Dobkin* docket and known to
6   plaintiffs' counsel since mid-2016.  Yet plaintiffs did not seek a transfer of *Dobkin* to
7   this Court at any time in those two years, even in opposing defendants' motion to stay
8   pending approval of the *Dobkin* settlement.   And, as plaintiffs themselves
9   acknowledge, they never made serious effort to engage in settlement discussions, let
10  alone present an actual demand to defendants.  *See* Pls.' Mot. at 5:7-10; *see also* Pls.'
11  Opp'n Mot. Stay (Dkt. No. 102) at 5:11-14; *cf.* June 8, 2017 Hr'g Tr. at 19:20-25 ("Mr.
12  Spencer: … I'd be happy to talk mediation as soon as we get the cert motion on file
13  and [defendants] can see it.").

14         If plaintiffs believed that *Dobkin* was amenable to transfer and consolidation
15  with this matter, they were required to advise the Court of that belief promptly at the
16  outset of the case.[4]  *Accord Church of Scientology of Cal.*, 611 F.2d at 750 (denying
17  transfer).  Plaintiffs' failure to timely invoke the first-filed case doctrine is fatal to their
18  motion.  *See id.*; *see also Esta Later Charters, Inc.*, 875 F.2d at 239 n.11.[5]  To rule
19  otherwise would only serve to condone plaintiffs' choice to sit idly for two years.

20         **Third**, plaintiffs' citation to *In re Checking Account Overdraft Litigation*, 859 F.
21  Supp. 2d 1313 (S.D. Fla. 2012) ("*Overdraft Litigation*") is of no assistance to them.
22  There, the Judicial Panel on Multidistrict Litigation established an MDL proceeding to

23

24  [4] Plaintiffs' invocation of Local Rule 83-1.3, *see* Pls.' Mot. at 4:21-22, is of no aid to
    them.  The rule applies only to related cases within this judicial district—*Dobkin* is
25  pending in the District of New Jersey.  And plaintiffs cannot dispute that they never
    notified the Court of *Dobkin*, such that even if the rule applied, they would have run
26  afoul of it.

27  [5] Plaintiffs' contention that defendants somehow wasted the Court's resources by
    defending against plaintiffs' claims is baseless.  *See* Pls.' Mot. at 4:21-5:17.  Rather, it
28  is plaintiffs that wasted the Court's time through prosecuting claims for former
    plaintiff Jeffrey Wilens for two years only to file a new complaint with new plaintiffs
    requiring, among other things, new written and deposition discovery.

3

**DEFENDANTS' OPPOSITION TO MOTION TO STAY, DISMISS, OR TRANSFER *DOBKIN* ACTION**

1  oversee the claims of numerous litigants on a consolidated pre-trial basis. *See* 859 F.

2  Supp. 2d at 1317, 1321.  The parties to the MDL proceeding had advanced the

3  litigation such that they had fully briefed a motion for class certification, and under the

4  auspices of the MDL court, one group of MDL litigants had engaged in extensive

5  settlement negotiations in preparation for mediation. *Id.* at 1317-18, 1323.  Nearly two

6  years later, the second-filed plaintiff brought suit to evade the on-going settlement

7  negotiations in the first-filed case. *Id.* at 1317-18.  Comity demanded the second-filed

8  court yield to the substantial work performed by the first-filed court. *Id.* at 1321.

9  None of the factors present in *Overdraft Litigation* is present here.  Unlike the

10  first- and second-filed cases there, this suit and *Dobkin* were filed contemporaneously,

11  and plaintiffs here never approached either court to request consolidation of claims

12  until their recent filing of the motion now pending before the Court.[6]  Unlike the first-

13  and second-filed cases there, both sets of plaintiffs here prosecuted their claims on

14  parallel tracks; *Dobkin* was not filed solely for the purpose of seeking approval of a

15  secretly-negotiated settlement.[7]  Further, at the time of settlement, the *Dobkin* court

16  was in the process of reviewing briefing on the agency issues central to the case. *See*

17  *Dobkin* Dkt. Nos. 68, 74.  And while it was the first-filed court in *Overdraft Litigation*

18  that oversaw settlement negotiations in preparation for mediation, here it was the

19  second-filed *Dobkin* court that not only supervised settlement negotiations in

20  preparation for mediation but then mediated the settlement.  Accordingly, to preserve

21

22  [6] Indeed, courts routinely decline to apply the first-filed case doctrine where, as here, the time between the filing of the actions is relatively short. *See National Union*, 2012

23  WL 3277222, at *3; *see also Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354-55 (S.D.N.Y. 1992) (declining to apply doctrine to cases filed 20

24  days apart, more than the two weeks between this case and *Dobkin*).

25  [7] Unlike *Overdraft Litigation*, no class certification motion is pending here, much less is fully briefed.  The Court denied former plaintiff Jeffrey Wilens' motion for class

26  certification without prejudice *before* defendants responded to it because Wilens sought to amend his complaint to replace himself with two new named plaintiffs. *See*

27  June 28, 2017 Order (Dkt. No. 92).  And the Court subsequently denied plaintiffs' case schedule, and adopted defendants' case schedule, recognizing the need for defendants

28  to take additional discovery before class certification is briefed should the Court not stay the case pending approval of the *Dobkin* settlement. *See* Aug. 9, 2017 Order (Dkt. No. 114); *see also* Jt. Stip. Regarding Case Scheduling (Dkt. No. 103).

4

**DEFENDANTS' OPPOSITION TO MOTION TO STAY, DISMISS, OR TRANSFER *DOBKIN* ACTION**

1   comity, the Court should recognize the substantial work performed by *Dobkin* court

2   and deny plaintiffs' motion.

3          **Fourth**, plaintiffs are wrong when they contend that the *Dobkin* settlement is a

4   "reverse auction" under *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir.

5   2002).   As an initial matter, the procedural posture of *Reynolds*—namely, review of

6   objectors' appeals from the district court's approval of the class settlement, *see* 288

7   F.3d at 279-80, 282—suggests that plaintiffs have raised this issue in the wrong venue.

8   Rather than seeking transfer of *Dobkin*, plaintiffs have the ability—like the *Reynolds*

9   litigants—to address the fairness of the *Dobkin* settlement as part of that proceeding,

10  and the Court should deny plaintiffs' motion on that basis alone.

11         Further, *Reynolds* and *Dobkin* share no similarities.   There, the court was

12  concerned that the district court gave insufficient consideration to whether the

13  defendant had pushed through a settlement to avoid an imminent *trial* in another class

14  action in which the defendant faced additional claims and a greater probability of being

15  found liable.  *See Reynolds*, 288 F.3d at 280-84.  Here, by contrast, plaintiffs admit that

16  the parties and the claims are the same, and both cases have proceeded on a parallel

17  litigation track with class certification briefing at some distance in both.   Nor have

18  plaintiffs offered any argument or evidence that the *Dobkin* plaintiffs' counsel are any

19  less effective litigators than plaintiffs' counsel here.

20          **Fifth**, plaintiffs' collateral attack on the *Dobkin* settlement is improper.  *See*

21  Pls.' Mot. at 5:21-6:15.  As defendants previously outlined, *see* Defs.' Reply Supp.

22  Mot. Stay (Dkt. No. 108) at 4:22-5:14, application of the first-filed case doctrine does

23  not turn on review of the *Dobkin* settlement's terms.   And, even if it did, recent TCPA

24  vicarious-liability decisions only underscore the difficulty (if not impossibility)

25  plaintiffs face in proving their claims and thus the concomitant fairness of the *Dobkin*

26  settlement.  For instance, in *Jones v. Royal Administration Services, Inc.*, --- F.3d ----,

27  2017 WL 3401317 (9th Cir. Aug. 9, 2017), the Ninth Circuit held that a lead-generator

28  telemarketer was not the agent of the defendant-seller of services such that TCPA

**DEFENDANTS' OPPOSITION TO MOTION TO STAY, DISMISS, OR TRANSFER *DOBKIN* ACTION**

1   vicarious liability could not attach.  Specifically, a defendant does not control a lead-
2   generator telemarketer for agency purposes even though the defendant may train the
3   telemarketer's staff, provide call scripts, and perform audits of the telemarketer's calls.
4   *Id.* at *1, *4-6.  Given jurisprudence such as *Jones*, the fairness of the *Dobkin*
5   settlement is beyond question.

6                                    **CONCLUSION**

7        In sum, plaintiffs' concession that this case is virtually the same as *Dobkin*, *see*
8   Pls.' Mot. at 8:10-11:18, counsels in favor of staying this case so that the *Dobkin* court
9   can complete adjudication of the class settlement.  Both cases involve the same claims
10  for alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.  The
11  *Dobkin* settlement class (namely, all individuals whose lead information was offered to
12  NRG Residential by *any* lead generator) encompasses the class that plaintiffs may seek
13  to represent in this case (namely, individuals whose lead information was offered to
14  NRG Residential by one of those lead generators).  And the release in the *Dobkin*
15  settlement would dispose of all of the claims that plaintiffs here had or have against
16  NRG Residential, NRG Energy, the independent lead generators, and their respective
17  affiliates.  Thus, for all the foregoing reasons, the Court should deny plaintiffs' motion
18  and allow the *Dobkin* court to complete adjudication of the class settlement.

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' OPPOSITION TO MOTION TO STAY, DISMISS, OR TRANSFER *DOBKIN* ACTION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

K&L GATES LLP

Dated:  August 21, 2017

By:  */s/ Gregory N. Blase*
Kevin S. Asfour (#228993)
kevin.asfour@klgates.com
K&L GATES LLP
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001

Andrew C. Glass (*pro hac vice*)
andrew.glass@klgates.com
Gregory N. Blase (*pro hac vice*)
gregory.blase@klgates.com
Roger L. Smerage (*pro hac vice*)
roger.smerage@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3100
Fax: (617) 261-3175

Attorneys for Defendants
*NRG ENERGY, INC. and NRG
RESIDENTIAL SOLAR SOLUTIONS
LLC*

7

**DEFENDANTS' OPPOSITION TO MOTION TO STAY, DISMISS, OR TRANSFER *DOBKIN* ACTION**